IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS BONNER              :         CIVIL ACTION
                           :
              v.           :
                           :
MONTGOMERY COUNTY, ET AL.  :         NO.  10-2055

## MEMORANDUM

**Padova, J.**                                         **March 28, 2011**

In this 42 U.S.C. § 1983 action, Plaintiff Thomas Bonner, who is currently serving a life

sentence in Pennsylvania for first-degree murder, asserts a substantive due process claim against

Montgomery County District Attorney Risa Vetri Ferman based on Ferman's objections to Bonner's

postconviction petitions for DNA testing.  Presently before the Court is Ferman's Motion to Dismiss.

For the reasons that follow, we grant the Motion.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On November 19, 1985, at 1:56 a.m., Valley Forge Park Ranger David Cavaliere observed

Bonner sitting in a car parked by the side of the road in Valley Forge Park.  Ranger Cavaliere shined

his lights on Bonner, and saw that Bonner had blood on his hand.  When Ranger Cavaliere got out

of his car, Bonner sped away, with cash and coins flying from the roof of his car.  On the ground

nearby were a pair of pants, a pair of shoes, money, and a box of Newport cigarettes.  The pants,

shoes, and some of the money were covered with blood and the pants were punctured in the right

thigh area.  Ranger Cavaliere went to the Upper Merion Township Police Department to prepare a

composite drawing of Bonner.

At 2:00 a.m., only minutes after the encounter between Ranger Cavaliere and Bonner, an

individual at the Sunoco gas station about five miles away found a dead body in the gas station

bathroom and called the police. The Upper Merion Township Police Department arrived at the gas station minutes later. In the bathroom, they found the body of August Bennick, one of the gas station attendants. Bennick had been stabbed sixty-five times.

Three days later, police received a phone tip that Bonner looked like the composite drawing that Ranger Cavaliere had prepared, and which had been circulated in local newspapers. Officers called Bonner and he went to the Upper Merion Police Station. There, the officers observed a fresh cut on Bonner's hand and a fresh puncture wound on his right thigh. They learned that he wore the same size pants and shoes as those found in the park. Bonner admitted to the officers that he had driven his girlfriend's car in Valley Forge Park on the night in question and that he smoked Newport cigarettes. The officers arrested Bonner for murder and related offenses.

At a jury trial in May 1986, the Commonwealth presented evidence that Bonner's fingerprints were found on the sink of the gas station bathroom; that blood consistent with Bonner's was found at the gas station, in the park, and under Bennick's fingernails; that blood consistent with Bennick's was found on items taken from the park; that head hair consistent with Bennick's was found in the park; and that shoeprint impressions at the gas station were made by the shoes recovered in the park. On the other hand, the murder weapon was never found, none of Bonner's hairs were found on the victim, and there were two gray hairs on one of Bonner's shoes that could not be definitively linked to Bennick.

Bonner took the stand in his own defense. He testified that he had gone to the gas station to fill up his tank and that, when the pump would not activate, he went inside the gas station looking for an employee. When he could not find one, he entered the bathroom, where he found Bennick, lying on the floor, being repeatedly stabbed by an unknown black male who was on top of him. The

black male was wearing an Army field jacket, blue hat, yellow gloves, and dark brown shoes. When he saw Bonner enter the bathroom, the black male lunged at Bonner, cutting his left hand and upper right thigh. Bonner lost his balance and fell on top of Bennick. The black male then threw money at Bonner and instructed him not to tell anyone what he had seen. Bonner grabbed the bathroom sink to pull himself to his feet, then left the gas station. He began driving to the Upper Merion Township Police Station but, afraid of what conclusions they might mistakenly draw, decided to drive to the park, where he threw his pants and shoes into the grass. He would have thrown away the money too, but he could not find it. The jury convicted Bonner of first degree murder and related offenses. The trial judge sentenced Bonner to life imprisonment.

The Pennsylvania Superior Court affirmed the judgment of sentence and the Pennsylvania Supreme Court denied Bonner's Petition for Allowance of Appeal. Commonwealth v. Bonner, 548 A.2d 637 (Pa. Super. Ct. 1988); Commonwealth v. Bonner, 562 A.2d 318 (Pa. 1989). On June 27, 2008, Bonner filed a pro se petition pursuant to the Post-Conviction Relief Act ("PCRA") seeking DNA testing. On October 31, 2008, Bonner's counsel filed an Amended Petition, seeking DNA testing of thirty six items and arguing that testing would corroborate Bonner's testimony that a black male had murdered Bennick. The PCRA court denied relief, reasoning that, even if DNA testing revealed the presence of a third party's DNA in the gas station bathroom, it would not establish Bonner's actual innocence. Commonwealth v. Bonner, Nos. CP-46-CR-0002472-1985 & CP-51-CR-0004900-1985 (Ct. Com. Pl. Mont. Cnty. Mar. 12, 2009). Plaintiff appealed to the Pennsylvania Superior Court, which also denied relief. Commonwealth v. Bonner, No. 1118-EDA-2009 (Pa. Super. Ct. Dec. 2, 2009). Bonner did not seek discretionary review in the Supreme Court of Pennsylvania. Instead, he filed this action.

The Amended Complaint alleges the following facts. Ferman is the Montomgery County District Attorney. In that capacity, she sets the policies for the office, which maintains and controls access to DNA evidence used in criminal prosecutions. The office maintains a policy, practice, and custom of summarily contesting and objecting to all prisoner requests for postconviction access to DNA evidence. Pursuant to that policy, Ferman contested Bonner's petitions for DNA testing and, because of Ferman's objections, the PCRA Court and Superior Court denied relief. DNA testing would be the "first step" in obtaining evidence to prove Bonner's actual innocence, because "[i]t would potentially give [Bonner] information from which he could further investigate and develop additional new evidence which could ultimately be used as [a] basis for a state post conviction relief act petition." (Am. Compl. ¶ 13.) The Amended Complaint asserted claims pursuant to § 1983 for violations of Plaintiff's First and Fourteenth Amendment rights.[1] However, at a hearing on March 17, 2011, Bonner withdrew his First Amendment claim and stated that, with respect to the Fourteenth Amendment, he asserts only that Ferman's conduct violated his Fourteenth Amendment right to substantive due process.[2] While Bonner sought to compel DNA testing before the state courts, here he seeks only access to DNA evidence so that he may test it himself.

On May 24, 2010, the Supreme Court of the United States granted certiorari in Skinner v.

---

[1]In his initial Complaint, Bonner asserted claims pursuant to the Sixth and Fourteenth Amendments against both Ferman and Montgomery County. Ferman filed the instant Motion to Dismiss, and Bonner filed an Amended Complaint. In the Amended Complaint, Bonner withdrew his Sixth Amendment claim and asserted a First Amendment claim. Rather than withdraw her Motion to Dismiss, Ferman filed a Memorandum of Law with an attached Supplemental Motion asking us to dismiss the Amended Complaint. The parties subsequently agreed to the dismissal of Montgomery County as a defendant.

[2]Accordingly, we conclude that, to the extent that the Amended Complaint asserted a procedural due process claim pursuant to 42 U.S.C. § 1983, Bonner has withdrawn that claim.

Switzer, 363 F. App'x 302 (5th Cir. 2010), to determine whether a convicted prisoner seeking access to biological evidence for DNA testing may assert a claim under 42 U.S.C. § 1983, or whether such a claim may be asserted only in a petition for a writ of habeas corpus. Skinner, 130 S. Ct. 3323 (2010). On September 15, 2010, with Ferman's Motion to Dismiss pending, we placed this case in suspense and awaited the Supreme Court's decision in Skinner. On March 7, 2011, the Supreme Court issued its decision. See Skinner v. Switzer, 562 U.S. ----, 2011 WL 767703 (Mar. 7, 2011). We offered the parties an opportunity to file amended pleadings and supplemental briefing in light of Skinner, but they chose not to do so.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss, we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

## III.    DISCUSSION

Ferman argues that Bonner's substantive due process claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because there is no right to postconviction access to DNA evidence that is

protected by the doctrine of substantive due process.[3]  Bonner argues that Ferman reads the precedents in this area too broadly, and that the Supreme Court has only rejected substantive due process as a basis for § 1983 claims seeking postconviction access to DNA evidence when the plaintiff's theory implicates the prosecutorial duty to disclose exculpatory evidence recognized in Brady v. Maryland, 373 U.S. 83 (1963).  We agree with Ferman.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV. "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component."  Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (citing Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992)).  Where, as here, a plaintiff challenges a non-legislative governmental act, "the Due Process Clause's primary protection against the arbitrary exercise of power by government officials is its requirement of fair procedures-that is, of procedural due

_____

[3]Ferman also argues that Bonner's claims are barred by the Rooker-Feldman doctrine, which essentially provides that, because 28 U.S.C. § 1257 vests appellate jurisdiction over state court judgments solely in the Supreme Court, district courts are without authority to review state court judgments.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (citing, among others, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 416 (1923)).  We disagree. The Rooker-Feldman doctrine only bars claims brought by "[t]he losing party in state court . . . complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment."  Skinner, 562 U.S. at ----, 2011 WL 767703, at *7 (Mar. 7, 2011) (footnote omitted); see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).  The Amended Complaint alleges that the state court decisions denying Bonner's requests for access to DNA evidence were "[p]remised upon [Ferman's] objection" and that Ferman's objection was the "direct and proximate" cause of Bonner's inability to obtain such access.  (Am. Compl. ¶¶ 15, 29.)  Thus, the Amended Complaint does not "complain[] of an injury caused by [a] state court judgment."  Skinner, 562 U.S. at ----, 2011 WL 767703, at *7.  Rather, as Bonner argues, the Amended Complaint asks us to review the constitutionality of Ferman's objection.  Accordingly, we conclude that Bonner's claims are not barred by Rooker-Feldman, and that we do have jurisdiction to consider them.  We therefore deny Ferman's Motion insofar as it seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

process." Id. However, in some cases, a governmental act "'that comports with procedural due process may still give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power.'" Id. (quoting Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997), and citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000)). Whether a non-legislative governmental act gives rise to a substantive due process claim depends on the nature of the liberty interest that the plaintiff asserts. The doctrine of substantive due process protects only "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (quoting Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 502-03 (1977) (plurality opinion) (first internal quotation), and Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937) (second and third internal quotations)), and citing Snyder v. Massachusetts, 291 U.S. 97, 105 (1934)).

Here, Bonner asserts a liberty interest in accessing DNA evidence to prove his innocence. In Skinner, the Supreme Court reaffirmed that there is no fundamental right to access DNA evidence that is protected by the doctrine of substantive due process. See Skinner, 562 U.S. at ----, 2011 WL 767703, at *3 (Mar. 7, 2011) (citing District Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2322-23 (2009)). The Court explained that its prior "decision in Osborne severely limit[ed] the federal action a state prisoner may bring for DNA testing" and it unequivocally stated that "Osborne rejected the extension of substantive due process to this area." Id. (citing Osborne, 129 S. Ct. at 2322); see also Osborne, 129 S. Ct. at 2322 ("Osborne seeks access to state evidence so that he can apply new DNA-testing technology that might prove him innocent," but "there is no

such substantive due process right.").

In spite of <u>Skinner</u>'s interpretation of <u>Osborne</u> as foreclosing all substantive due process claims for access to DNA evidence, Bonner argues that <u>Osborne</u> was limited to substantive due process claims that rest on a theory implicating <u>Brady</u>. Not only is this argument contrary to <u>Skinner</u>, but we also see no basis, in <u>Osborne</u> or elsewhere, for such a limitation. The Court in <u>Osborne</u> spoke generally of its concern that constitutionalizing "the issue of DNA access" would "short circuit" state legislative efforts to "confront[] the challenges DNA technology poses to our criminal justice systems and our traditional notions of finality, as well as the opportunities it affords." <u>Osborne</u>, 129 S. Ct. at 2322. The Court further stated that it was "reluctant to enlist the Federal Judiciary in creating a new constitutional code of rules for handling DNA." <u>Id.</u> While the Court recognized that the United States Court of Appeals for the Ninth Circuit, in affirming the District Court's conclusion that Osborne did have a limited constitutional right to postconviction access to DNA evidence, had relied on the prosecutorial duty to disclose exculpatory evidence recognized in <u>Brady</u>, nothing in its reasoning or in the text of its opinion suggests that the Court meant only to foreclose substantive due process claims seeking access to DNA evidence and alleging postconviction violations of <u>Brady</u> while leaving room for other substantive due process claims centered on "the issue of DNA access." <u>Id.</u> Rather, we read <u>Osborne</u> as <u>Skinner</u> did: the question presented was whether a liberty interest in accessing DNA evidence to prove actual innocence was a fundamental right protected by the doctrine of substantive due process, and the Court definitively held that it was not. See <u>Skinner</u>, 562 U.S. at ----, 2011 WL 767703, at *9 ("<u>Osborne</u> has rejected substantive due process as a basis for [DNA testing] claims." (citation omitted)).

Accordingly, we conclude that Bonner has failed to state a claim upon which relief may be

granted insofar as he claims that Ferman's conduct in his case violated his right to substantive due process under the Fourteenth Amendment. Moreover, in light of the clear dictates of Osborne and Skinner, we find that giving Bonner leave to amend his substantive due process claim would be futile, and we therefore dismiss the substantive due process claim with prejudice. See Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) ("[L]eave to amend need not be granted when amending the complaint would clearly be futile."). Because Bonner has withdrawn all other claims that he asserted in this action, we dismiss the Amended Complaint in its entirety.

An appropriate Order follows.


BY THE COURT:


/s/ John R. Padova
_____
John R. Padova, J.